Michelle OLIVER, et al., Plaintiffs,

v.

KALAMAZOO BOARD OF EDUCATION, et al., Defendants.

No. K88–71 C.A.

United States District Court,
W. D. Michigan, S. D.

Nov. 4, 1981.

Michael Sussman, Asst. Gen. Counsel, Thomas I. Atkins, Gen. Counsel, New York City, for plaintiffs.

Ford, Kriekard, Staton, Allen & Decker, Kalamazoo, Mich., for defendant Kalamazoo Bd. of Ed.; Arthur Staton, Jr., Kalamazoo, Mich., of counsel.

Richard P. Gartner, Asst. Atty. Gen., Lansing, Mich., for State defendants.

Foster, Swift, Collins & Coey, Lansing, Mich., for intervenors MEA and KEA; Thomas A. Baird, Lansing, Mich., of counsel.

## OPINION

FOX, Senior District Judge.

This case is before the court on plaintiffs' motion for injunctive relief that would prohibit the Kalamazoo Board of Education from terminating any black tenured teacher due to a need for reduction of staff size.

The factual and legal history of this case is long and involved, the majority of which need not be repeated here. The court would merely reference its earlier opinions and orders, including those recorded at 368 F.Supp. 143 (W.D.Mich.1973) and 346 F.Supp. 766 (W.D.Mich.1971) which found defendants liable for the unconstitutional segregation of the Kalamazoo Public Schools. Since that time the court has been involved in various efforts to assure that the school district would be desegregated and that the district would be purged of the vestiges of that unconstitutional condition.

In that connection, the court has most recently become involved with questions regarding the effects of staff reductions due to declining enrollment and financial resources. Prior to the 1980–81 school year, the district laid off a large number of teachers. When it became apparent that recalls were going to be made, the court was called on to determine the proper order of recall. In an opinion dated September 30, 1980, the court rejected both straight seniority recall, which was provided for in the contract and supported by the Kalamazoo Education Association, and the proposal by the plaintiffs to order all black faculty to be recalled. Rather, the court ordered the KBE to recall all black tenured teachers and to implement a 4:1 ratio for further recalls. This ratio was also to be used for new hirings until the 20% minority staff goal of the district and the court was reached. 498 F.Supp. 732 (W.D.Mich.1980).

On August 24, 1981, the KBE again felt compelled to terminate some of its faculty. Included in the 58 teachers on this new layoff list were a number of tenured black teachers. This layoff list did not strictly follow seniority but was the KBE's attempt to implement the court's order from the preceding fall, i. e., layoff, as well as recall, on a 4:1 ratio. It was later recognized that making the layoffs 20% black, when the staff was less than 20% black, lowered the percentage of black staff. The plaintiffs sought a temporary restraining order to block this termination of black tenured teachers. On August 25, 1981, this court issued such an order. By stipulation of the parties, this order has been continued until the date of this opinion. The consequences

of this order are that all black tenured teachers laid off by the KBE's action of August 24, 1981 were rehired. Of the eleven white teachers who were displaced by this action, one tendered a resignation and the remaining ten were offered positions by the KBE in a newly created contract substitute pool. Since the beginning of school, several of these teachers have been placed in permanent classroom positions. Mahlon Lantz, Director of Employee Services, testified that all were expected be placed within one week of the hearing. He also stated that the total additional cost to the district, if this program was maintained for the school year, would be about $6,000.

Plaintiffs have now moved this court for a preliminary injunction to block these layoffs and any future layoffs of black tenured teachers until the district's teaching staff reaches the goal of being 20% black. Their position is that the court, in its September 30, 1980 order, balanced the considerations of equity for white teachers, equity for black children and quality education by finding that all the black tenured teachers on layoff must be recalled first, regardless of seniority. Translated from a recall situation to a layoff situation, this opinion is interpreted as requiring the KBE to retain all black tenured teachers until its goal·is reached. This, it is argued, is consistent with the spirit of the court's order which sought to provide an upward thrust toward the district's goal. The proposals of the KBE and the KEA are alleged to be inconsistent with the letter and spirit of this court's decisions.

The plaintiffs also argue that the district's past history of underrepresentation of blacks on the teaching staff could justify this court's issuance of an injunction prohibiting termination of black teachers.

The position of the KEA is that the proper order of layoff is that which is provided for in the collective bargaining agreement. The KEA sees no justification for circumventing a seniority layoff/recall system. They argue that it is unfair to impose the burden of bringing the district's staff to a particular racial composition on the white teachers, who are completely innocent of doing anything that brought on the segregated system. The KEA also notes that the court's own expert testified that the district's teaching staff would be considered sufficiently integrated by all labor indicators except by the goal that was first raised by the district and later adopted by the court. It is the position of the KEA that granting the plaintiffs' motion would mean that no black tenured teacher could be laid off in the foreseeable future, thus depriving much more senior white tenured teachers of their positions. Given the present number of black teachers in the district and the unlikelihood of a significant number of new hires in the near future, 275 white teachers would have to be laid off before the staff would be 20% black and before black teachers would be subject to layoffs.

While not accepting the KBE's position, the KEA considers the rights of the white teachers to be protected to a greater degree by this position. The KEA also requests that a bond be posted by plaintiffs to cover the salaries of the white teachers who will be discharged if plaintiffs' relief is granted. Finally, if such relief is granted, they seek a stay of the court's judgment pending an emergency appeal to the United States Court of Appeals.

The KBE advances its "parity" approach as the proper balancing of the interests in these circumstances. Briefly, this proposal would follow reverse seniority in its layoffs except as it would be necessary to maintain the current racial proportions of the staff. Though the layoffs ordered by the Board in August contained a greater percentage of blacks (18.1%) than were previously employed by the district (11.2%), the effects of retirements and leaves of absence resulted in the percentage of black teaching staff being unchanged (11.2%). It has not been made clear if this parity proposal would continue to consider other such staff adjustments in reaching a final staffing figure, as was proposed in August, or whether the racial makeup of the layoffs would simply be determined by the percentages prior to layoff, without consideration of the additional transitional factors.

It is argued that parity protects the plaintiffs by guaranteeing black role models for all students while not ignoring the contractual rights of experienced white teachers. The KBE argues further that this parity approach to layoffs, combined with the 4:1 recall ratio would provide the upward thrust sought by the court. In other words, there would be no backsliding as a result of layoffs, and later recalls and new hires would be at a higher rate than current representation (20%), thereby moving the district toward its ultimate goal.

Much has been made about the jurisdiction of this court to consider this staffing question within the parameters of the Kalamazoo school desegregation case. There is also a great deal of discussion as to whether deviation from contract seniority layoffs is proper and necessary and, if so, what the rule of reasonableness mandates in the way of adjustments. However, this case first should be put into proper context. The court wants to make clear that this not a typical employment discrimination case. The plaintiffs are children attending the Kalamazoo public schools. It is to these people that this court owes its primary duty. Therefore, the fact that the current black representation of the faculty exceeds labor indicators is not conclusive. Also, the previous rulings of this court have enunciated its jurisdictional authority and the necessity of modification of contract provisions in aid of eliminating all traces of an unequal, segregated system. This goal cannot be achieved if contracts, or other matters, are allowed to interfere with the desegregation process. The Constitution takes precedence over all, and to achieve its required goals, obstructions such as the collective bargaining agreement and state statutes have to give way. *Oliver v. Kalamazoo Board of Education*, 498 F.Supp. 732, 753 (W.D.Mich. 1980), appeal pending before the Sixth Circuit Court of Appeals. Although the opinion on September 30, 1980 dealt specifically with the order of teacher recall, the prior layoffs of teachers by the district created the situation in the first place. It would be incorrect to view that decision merely as applying to recall/hiring situations. It was for the purpose of correcting deficiencies in those layoffs, in addition to guiding future recall/hiring decisions, that the opinion and order of September 30 was entered.

Thus, this decision directly turns on the interpretation and implementation of that order. The court sees no need to review its earlier holdings as to jurisdiction and to the proper balancing of interests. As in 1980, so in 1981, the interest of quality education and the interests of the school children, black and white, in having black role models in positions of responsibility and authority, are served by maintaining the pool of experienced black teachers in the district. Periods of economic difficulty must not be allowed to impede the district's efforts at providing a sufficient number of minority role models to its students of all races. If this court's abandonment of seniority recall a year ago is accepted, the impact of this injunction on the district's white teaching staff is not so harsh as to require the elimination of the court's relief. Assuming a staff of 741 teachers with 12.5% of the staff being black,[1] a layoff of 25 teachers under the parity system would be made up of 22 white teachers and only 3 black teachers. Therefore, the difference between the parity approach of the KBE and the relief sought by the plaintiffs is not substantial. The rights of the white teachers are not being heavily trammeled on nor, in this court's judgment, being unnecessarily circumvented.

This court is of the opinion that the prerequisites for the issuance of a preliminary injunction can be found in this case. As in the past, this court is convinced that a denial of this relief will inflict irreparable damage on the development of the children enrolled in the Kalamazoo Public School system, especially on the attitudinal and emotional development of the district's black students. The plaintiffs are likely to prevail in this court on the merits if final

1. Staff levels taken from plaintiffs' exhibit number 4 as being those of the Kalamazoo Public Schools, though they are only used here as an example.

injunctive relief is sought and the harm to the defendants, especially to the KBE, is not of sufficient magnitude to prevent this court from ordering the injunction. The burden on the eleven displaced white teachers is obviously slight since there has been no loss of contracted status and all should have been placed in a permanent classroom position by this time. The burden on white tenured teachers in the future is unclear since the necessity and extent of future layoffs is not known. The equities, therefore, must be balanced in favor of the plaintiffs. Since this opinion is grounded in the earlier orders of this court, it is also necessary to preserve the status quo found in and created by those decisions.

Therefore, it is the holding of this court that the plaintiffs' motion for a preliminary injunction should be granted. The defendant-KBE is ordered to reinstate any black tenured teacher laid off pursuant to KBE action on August 24, 1981. Further, the KBE is ordered not to terminate any black tenured teachers as a part of economically-induced staff reductions until the district achieves its goal of a 20% black teaching staff. This order does not apply to cases where entire programs are eliminated and the teaching staff cannot be integrated into the system.

Due to the public interest served by the implementation of this court's order and in view of the fact that the white teachers who were replaced in the classroom under the temporary restraining order have not lost any wages or any significant contracted-for rights, this court waives the security requirement of Federal Rule of Civil Procedure 65(c).

The KEA's motion asking this court to stay its opinion and order while it attempts an emergency appeal to the Court of Appeals is denied. However, in light of the fact that this decision is so closely related to the decision of this court already on appeal, the U. S. Court of Appeals for the Sixth Circuit is urged to consolidate any appeal in this decision with its consideration of the September 30, 1980 order.

